UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE JAMES JONES,

        Petitioner,

v.                                          CASE NO. 06-13465
                                              HONORABLE BERNARD A. FRIEDMAN

SHIRLEE HARRY,

        Respondent.
_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION AND GRANTING IN PART A CERTIFICATE OF APPEALABILITY

Petitioner Willie James Jones has filed a *pro se* application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state convictions for murder, conspiracy to commit murder, and solicitation to commit murder. The Court finds no merit in Petitioner's claims. Therefore, the habeas petition will be denied.

**I. Background**

    **A. The State Court Proceedings**

Petitioner was charged in Wayne County, Michigan with first-degree murder, conspiracy to commit first-degree murder, and solicitation to commit first-degree murder. The charges arose from the fatal shooting of Kenneth Flowers in Detroit on February 17, 2001. A key prosecution witness was McLister Trice, who dated Mr. Flowers until a few weeks before the shooting. There was evidence that Mr. Flowers harassed Ms. Trice after they ended their relationship. Ms. Trice had a romantic relationship with Petitioner before she began dating Mr. Flowers. The prosecutor's theory was that Petitioner was jealous of Flowers and paid a man to kill him. On the day of the shooting, Ms. Trice allegedly informed Mr. Flowers that Petitioner

was arranging to have him killed and that he was going to die that day. Later that same day, an unidentified man shot and killed Flowers.

Petitioner was arrested almost two years after the crimes were committed. At trial, he denied any involvement in the crimes, and he testified that he did not make certain incriminating statements, which Ms. Trice attributed to him. His defense was that the prosecution's case was based on hearsay and inferences. Defense counsel pointed out that there was no evidence that Petitioner shot anyone or that he was present during the shooting. Counsel argued that there was no direct evidence showing a connection between Petitioner and the shooter and that the case was replete with reasonable doubt.

On June 20, 2003, a circuit court jury found Petitioner guilty of the lesser-included offense of second-degree murder, MICH. COMP. LAWS § 750.317. The jury also found Petitioner guilty, as charged, of conspiracy to commit first-degree murder, MICH. COMP. LAWS § 750.157a and MICH. COMP. LAWS § 750.316, and solicitation to commit first-degree murder, MICH. COMP. LAWS § 750.157b(3) and MICH. COMP. LAWS § 750.316. The trial court sentenced Petitioner to concurrent terms of life imprisonment for the conspiracy conviction and nineteen to thirty years in prison for the murder and solicitation convictions. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished, *per curiam* opinion, *see People v. Jones*, No. 250326 (Mich. Ct. App. Mar. 22, 2005), and on December 27, 2005, the Michigan Supreme Court denied leave to appeal. *See People v. Jones*, 474 Mich. 971; 707 N.W.2d 200 (2005) (table).

**B. The Habeas Petition and Answer in Opposition**

Petitioner signed and dated his habeas corpus petition on June 2, 2006.[1] The grounds for

---

[1] The petition was received by the Clerk of Court and filed on August 1, 2006.

relief are:

> I. Petitioner was deprived of his V and XIV rights of due process when prior bad acts were introduced into evidence.
>
> II. Petitioner was denied his AMS V and XIV rights of due process and his AM VI right to effective assistance when counsel opened the door to prejudicial hearsay testimony. The conspiracy exception to the hearsay rule is inapplicable and the right of confrontation was violated.
>
> III. Defendant was deprived of his AMS V and XIV rights of due process when the prosecutor injected non-record evidence into the case.
>
> IV. Defendant was deprived of his AMS V and XIV rights of due process when the jury returned an inconsistent verdict.
>
> V. Defendant was deprived of his AM V and XIV rights of due process when the court failed to instruct on solicitation to commit second degree murder.
>
> VI. Defendant was deprived of his AM V and XIV rights of due process when he was deprived of his right to be free from double jeopardy.
>
> VII. Defendant was deprived of his AM V and XIV rights of due process when Defendant was convicted in the absence of proof beyond a reasonable doubt.

Respondent argues that Petitioner's claims are not cognizable on habeas review, are procedurally defaulted, or lack merit because the state court's adjudication of the claims was a reasonable application of Supreme Court precedent. With one exception, the Court has found it more efficient to address Petitioner's claims on the merits rather than to analyze whether they are procedurally defaulted. Courts need not address procedurally defaulted issues before deciding against a petitioner on the merits. *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (quoting *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518,

525 (1997)).

## II. Standard of Review

Petitioner is entitled to the writ of habeas corpus only if the state court's adjudication of his claims on the merits –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. Section "2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotation marks and citations omitted).

## III. Discussion

### A. Other Acts Evidence; Prosecutorial Misconduct

Petitioner alleges that he was deprived of his constitutional right to due process when a prosecution witness was permitted to testify about an altercation between Petitioner and Kenneth

Flowers a few weeks before the shooting. Petitioner maintains that the evidence could have convinced the jury that he had a propensity to commit such acts and that he was guilty of the charged crimes.

Petitioner further alleges that the prosecutor injected non-record evidence into the case when he stated in his opening statement and closing argument that Petitioner threatened Kenneth Flowers with the gun during the incident. According to Petitioner, there was only hearsay evidence that he possessed a gun during the incident and there was no evidence that he threatened Mr. Flowers with the gun. Petitioner asserts that defense counsel was ineffective for not seeking a mistrial on the basis of the prosecutor's remarks.

### 1.  The State Court Decision

The Michigan Court of Appeals reviewed Petitioner's "other acts" and prosecutorial-misconduct claims for "plain error" affecting substantial rights because Petitioner did not object to the alleged errors at trial. The court of appeals concluded that the trial court did not err in admitting the "other acts" evidence because the evidence was relevant and was offered as proof of motive, intent, and identity of the shooter, not to show Petitioner's character or propensity to commit murder. The court of appeals also stated that the probative value of the evidence was not substantially outweighed by unfair prejudice, because the only "bad act" that could have negatively impacted Petitioner was testimony that he was carrying a gun. The court of appeals determined that the prosecutor's argument was proper and that defense counsel was not ineffective for failing to object to the argument.

### 2.  Analysis

This Court finds no merit in Petitioner's "other acts" claim because

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence . . . . While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003). Because the Supreme Court has not held that the use of propensity or "other acts" evidence violates the Constitution, the state appellate court's conclusion that the evidence was admissible did not result in a decision that was "contrary to" Supreme Court precedent under 28 U.S.C. § 2254(d). Petitioner's disagreement with the state court's ruling that the disputed evidence was admissible "is not cognizable on federal habeas review inasmuch as it involves no constitutional dimension." *Bey v. Bagley*, 500 F.3d 514, 523 (6th Cir. 2007), *cert. denied*, __ U.S. __, 128 S. Ct. 1704 (2008).

To prevail on his prosecutorial-misconduct claim, Petitioner must demonstrate that the prosecutor's conduct infringed on a specific constitutional right or infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The complained-of conduct must be both improper and flagrant to obtain habeas relief, *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006), *cert. denied*, 549 U.S. 1255 (2007), and "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979). Prosecutors may not misrepresent facts in evidence, nor assert facts that were never admitted in evidence. *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000). However, they may "argue the record . . . and forcefully assert reasonable inferences from the evidence." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005).

Jeff Adams testified at trial that, two weeks before the shooting, Kenneth Flowers

6

followed McLister Trice into a liquor store. About five minutes later, Flowers ran out of the store and told Mr. Adams that he had gotten into an argument with Petitioner and Ms. Trice and that he had punched Petitioner in the face. Flowers informed Mr. Adams that Petitioner possessed a gun. Flowers and Adams then left the area in a hurry. (Tr. June 16, 2003, at 172-78.)

It was reasonable for the prosecutor to infer from this evidence that Petitioner threatened Flowers with a gun during the incident. Therefore, the prosecutor's comments were proper, and defense counsel's failure to seek a mistrial did not amount to deficient performance. "Counsel cannot be found ineffective for failing to bring meritless motions." *Johnson v. Tennis*, 549 F.3d 296, 303 (3d Cir. 2008) (citing *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)).

### B. Hearsay, Confrontation, and Trial Counsel

Petitioner claims that he was denied his constitutional rights to due process and to confront the witnesses against him when certain hearsay evidence was admitted at trial. He also claims that his trial attorney was ineffective for opening the door to the admission of the evidence. The Michigan Court of Appeals concluded on review of this claim that the trial court did not abuse its discretion by admitting the evidence for impeachment purposes, that Petitioner's right of confrontation was not violated, and that defense counsel was not ineffective.

Whether the evidence was inadmissible hearsay under the Michigan Rules of Evidence is inconsequential, because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991).

Petitioner's constitutional argument is that his right to confront the witnesses against him was violated by the admission of the hearsay. The Confrontation Clause of the Sixth Amendment "guarantees to a criminal defendant the right 'to be confronted with the witnesses against him.' U.S. Const. amend. VI." *Danner v. Motley*, 448 F.3d 372, 377 (6th Cir. 2006). "The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004). The declarants in this case (Petitioner and McLister Trice) testified at trial. Therefore, Petitioner's right of confrontation was not violated.

### 1. Clearly Established Law

Petitioner alleges that his trial attorney was ineffective because she opened the door to the hearsay.[2] To prevail on this claim, Petitioner must show that "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness" and if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687-88. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

---

[2] Although Petitioner asserts that his attorney did not object to the evidence, she opposed the prosecutor's motion in limine to admit the evidence.

8

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

### 2. The Facts

Before trial, the trial court ruled that the prosecutor could not use McLister Trice's statement to Kenneth Flowers that Petitioner was arranging to kill Flowers. The court declined to say whether the prosecutor could use Ms. Trice's statement and other testimony to impeach Trice if she denied making the statement. (Tr. June 3, 2003, at 19-26.)

At trial, the prosecutor asked Ms. Trice whether it was true that she said some things to Kenneth Flowers on the day of the shooting. Before Ms. Trice could answer, the trial court warned the prosecutor that he was getting into controversial territory. In the jury's absence, the court stated that, although some of the statements the court previously excluded from evidence might be contrary to Ms. Trice's testimony, the prosecutor could not seek to admit the excluded evidence under the guise of impeachment. The court said that Ms. Trice had already established the prosecution's case and that there was nothing to impeach. The trial court also warned defense counsel that, if she was not careful, her anticipated cross-examination of Ms. Trice might lead to the admission of the previously excluded statements. (Tr. June 17, 2003, at 46-60.)

Defense counsel then proceeded to cross-examine Ms. Trice about her statement to the police and the manner in which the police had treated her. Defense counsel also asked Ms. Trice whether her testimony on direct examination regarding statements that Petitioner allegedly

9

made to her was accurate. Ms. Trice responded to defense counsel's questions by stating that the police had mistreated her, called her unflattering names, turned her words around, and threatened to take her children if she did not make a statement.

In the jury's absence, the prosecutor argued that defense counsel had opened the door to the admission of the previously excluded evidence. The trial court agreed, stating that defense counsel "not only opened the door," but "kicked it down" by attacking the integrity of Ms. Trice's statement to the police. The court ruled that the prosecutor could try to rehabilitate Ms. Trice by bringing out the fact that she made incriminating statements about Petitioner before the police questioned her. (Tr. June 17, 2003, at 61-67, 78-83, and 86-87.)

The prosecutor subsequently elicited testimony that Ms. Trice told Kenneth Flowers on the day of the shooting that Petitioner was arranging to have Flowers killed and that Flowers was going to die that day. (*Id*. at 113 (Lucretia Adams' testimony) and at 132 and 139 (Emma Flowers' testimony)). The prosecutor also elicited testimony that Ms. Trice had told the police she thought Petitioner was going to have Flowers beat up, but not shot (*id*. at 90-91) and that Ms. Trice had informed her stepmother that Petitioner was going to handle her problem with Kenneth Flowers that day (*id*. at 102-03).

### 3. The State Court Opinions

Although defense counsel opened the door to damaging evidence, the trial court noted that, in every case there are certain questions which must be asked on cross-examination even though the questions and answers can have consequences. The court stated that it did not think anyone could fairly criticize defense counsel's strategy in cross-examining the witness in the manner she did. (Tr. June 17, 2003, at 87-88.)

The Michigan Court of Appeals agreed. It stated that defense counsel would have been remiss not to address and try to explain Ms. Trice's statement to the police in which she quoted Petitioner as saying that "the order had been taken care of," that he had "already paid the [person]," and that he responded, "What you thought" when she asked him whether he had any involvement in the shooting. The court of appeals stated that "[c]ounsel's strategy was clearly to try to show that Trice did not know what defendant meant by the statements" and that, "[g]iven counsel's limited options, this strategy was not unsound." *Jones*, Mich. Ct. App. No. 250326, 2005 WL 657578, at *3. The court of appeals concluded that "defense counsel's performance did not fall below an objective standard of reasonableness, and counsel's representation did not prejudice defendant such that it deprived him of a fair trial." *Id*.

### 4. Analysis

This Court agrees that it was reasonable trial strategy to attack Ms. Trice's statement to the police in which she incriminated Petitioner. By attempting to show that Ms. Trice's statement to the police was influenced by how the police treated her, counsel undermined Ms. Trice's incriminating comments about Petitioner. The risk in pursuing this line of questioning was that it opened the door to further incriminating testimony. However, the alternative was to let the incriminating statements go unchallenged.

Even if defense counsel's performance was deficient, the prosecutor had already alluded to some of the controversial hearsay which followed. In his opening statement, the prosecutor quoted Ms. Trice as saying to Mr. Flowers, "[Petitioner] is making arrangements to have you die. You're going to die today." (Tr. June 16, 2003, at 137).

Furthermore, Ms. Trice testified on direct examination that, about 4:00 p.m. on the day of

11

the shooting, Petitioner informed her on the telephone that "the order had been taken care of." Ms. Trice responded to this comment by asking Petitioner not to go to Kenneth Flowers' home and bother him. Petitioner replied that he had already paid someone. An hour or two later, Ms. Trice heard from her stepmother that Kenneth Flowers had been shot. About 7:00 p.m., Ms. Trice asked Petitioner whether he had anything to do with the shooting. Petitioner responded, "What you thought." (Tr. June 17, 2003, at 40-45.) The jury could have interpreted this testimony regarding Petitioner's comments to Ms. Trice to mean that he had paid someone to shoot Kenneth Flowers, just as Ms. Trice suspected. There was additional evidence that, although Petitioner was not the shooter, two witnesses implicated him by his nickname when the police responded to the crime scene. (Tr. June 17, 2003, at 153.)

In conclusion, defense counsel's strategy was reasonable under the circumstances, and her error was not so serious as to deprive Petitioner of a fair trial. Furthermore, given Ms. Trice's testimony on direct examination, there is not a reasonable probability that the result of the trial would have been different but for counsel's error. The state appellate court's decision was not contrary to, or an unreasonable application of, *Strickland*.

**C. The Jury's Verdict**

Petitioner alleges that the jury returned an inconsistent verdict when it convicted him of second-degree murder and conspiracy to commit first-degree murder. The Michigan Court of Appeals stated that Petitioner waived appellate review of his claim when his attorney admitted at sentencing that juries may render inconsistent verdicts. (Tr. July 16, 2003, at 10 and 14.) Even if Petitioner did not waive review of his claim, the Supreme Court has stated that "inconsistent verdicts are constitutionally tolerable." *Dowling v. United States*, 493 U.S. 342, 353-54 (1990)

12

(citing *Standefer v. United States,* 447 U.S. 10, 25 (1980)).  Thus, Petitioner's constitutional argument has no merit.  The fact that the jury's verdict may have been inconsistent under state law is not a basis for issuing the writ of habeas corpus.  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

### D.  The Jury Instructions

Petitioner alleges next that he was deprived of his constitutional right to due process when the trial court failed to instruct on solicitation to commit second-degree murder.  The Michigan Court of Appeals declined to review this claim on the merits because defense counsel not only failed to request an instruction on solicitation to commit second-degree murder, but she expressly approved the jury instructions as given.

The United States Supreme Court has not decided whether due process requires the giving of jury instructions on lesser-included offenses in non-capital cases.  *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980).  Consequently, the United States Court of Appeals for the Sixth Circuit has concluded that "the Constitution does not require a lesser-included offense instruction in non-capital cases."  *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990) (*en banc*)).  "[F]ailure to instruct on a lesser included offense in a noncapital case is not 'such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'"  *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (quoting *Bagby*, 894 F.2d at 797).

Even if Petitioner's claim were cognizable on habeas review, he waived review of the claim by not requesting a jury instruction on solicitation to commit second-degree murder and by not objecting to the instructions as given.  The Court may consider the substantive merits of

13

Petitioner's procedurally defaulted claim only if he demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law" or that a fundamental miscarriage of justice will occur if the Court fails to consider the claim. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner urges the Court to excuse the forfeiture of his claim on the basis that a manifest injustice will occur if the Court does not consider his claim. Petitioner asserts that he is actually innocent of the crimes for which he was convicted.

The narrow exception for fundamental miscarriages of justice is reserved for cases in which the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004). To be credible, however, a claim of actual innocence "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Petitioner has not presented any new evidence in support of a claim of actual innocence. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to consider the substantive merits of Petitioner's claim about the jury instructions. The claim is procedurally defaulted.

### E. Double Jeopardy

Petitioner alleges that his three convictions violated his right not to be placed in double jeopardy. In support of this argument, Petitioner contends that the same evidence was used to prove all three offenses and, therefore, he was subjected to multiple punishments for the murder. The Michigan Court of Appeals rejected this argument and concluded that Petitioner's

14

convictions did not violate double jeopardy protections because the statutes in question were aimed at different social norms.

The Double Jeopardy Clause of the Fifth Amendment provides that no person may "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Clause protects against multiple punishments for the same offense. *Witte v. United States*, 515 U.S. 389, 391 (1995).

"Under *Blockburger* [*v. United States*, 284 U.S. 299, 304 (1932)]*,* penalties imposed under two separate statutes do not constitute double jeopardy if 'each provision requires proof of an additional fact which the other does not.'" *Carter v. Carter*, 59 Fed. Appx. 104, 109 n.3 (6th Cir. 2003) (unpublished decision). "*Blockburger* . . . is a rule of statutory construction which guides federal courts in determining the scope of *federal* statutes." *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989). It "does not necessarily apply to a federal court's construction of a state statute." *Id*. at 780. "Whether punishments are 'multiple' under the double jeopardy clause is essentially a question of legislative intent." *Id*. at 779-80. "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes" and "a state court's determination of the legislature's intent." *Id.* at 780.

The Michigan Court of Appeals correctly determined that the purpose of the murder statute is to protect human life and to prohibit wrongful slayings. *People v. Perry*, 460 Mich. 55, 62; 594 N.W.2d 477, 481 (1999). The conspiracy and solicitation statutes have different aims. "The crime of solicitation was intended by the Legislature to punish the initial instigator, whereas the crime of conspiracy was intended to address the increased danger of group action arising from an agreement to act illegally." *People v. Burton*, No. 195231, 1998 WL 1991276, at

15

*2 (Mich. App. May 29, 1998) (unpublished opinion citing *People v. Rehkopf,* 422 Mich. 198, 207-208; 370 N.W.2d 296 (1985); *People v. Vandelinder,* 192 Mich. App. 447, 452-453; 481 N.W.2d 787 (1992)). Because the legislative intent behind each statute is different, the Double Jeopardy Clause was not violated.

Further, even if *Blockburger* applies, each of the offenses in question requires proof of different elements. Convictions for

> solicitation to commit murder and conspiracy to commit murder do not violate the Double Jeopardy Clause of the United States Constitution because each crime requires an element of proof that the other does not require. Solicitation requires an offer of something of value to induce another to commit an illegal act, but conspiracy does not. Conspiracy requires an agreement to commit an illegal act, but solicitation does not. Thus, the two offenses are different for purposes of double jeopardy under the "same elements" test set forth by the United States Supreme Court in *Blockburger.*

*Northington v. Elo*, 173 F.3d 429, 1999 WL 149664, at *3 (6th Cir. Mar. 3, 1999) (unpublished).

Murder requires proof of a death, something that neither conspiracy, nor solicitation, require. Conspiracy does not require an overt act, *People v. Cotton,* 191 Mich. App. 377, 393; 478 N.W.2d 681, 689 (1991), and solicitation does not require an actual homicide. *People v. Crawford*, 232 Mich. App. 608, 616; 591 N.W.2d 669, 673-74 (1998)). To conclude, Petitioner's double jeopardy claim lacks merit, because the "same elements" test of *Blockburger* test was not violated, and the legislative intent for each offense is different.

**F. Sufficiency of the Evidence**

Petitioner's seventh and final claim alleges that he was convicted in the absence of proof beyond a reasonable doubt. Petitioner contends that there was no proof of a nexus between him and the shooter, no proof of an agreement between them, and no evidence that he intended to kill

16

Kenneth Flowers or knew that Flowers would be murdered. The Michigan Court of Appeals found sufficient evidence to support each of Petitioner's convictions.

### 1. Clearly Established Law

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The critical question on review of the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

The Jackson "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16. In Michigan, the elements of second-degree murder are:

> (1) a death, (2) caused by an act of the defendant, (3) absent circumstances of justification, excuse, or mitigation, (4) done with an intent to kill, an intent to inflict great bodily harm, or an intent to create a very high risk of death with the knowledge that the act probably will cause death or great bodily harm.

*People v. Bailey,* 451 Mich. 657, 669; 549 N.W.2d 325, 331 (1996) (quoting *People v. Dykhouse,* 418 Mich. 488, 508-509; 345 N.W.2d 150, 158 (1984)). Criminal conspiracy

> arises from a mutual agreement between two or more parties to do or accomplish a crime or unlawful act. *People v. Atley,* 392 Mich. 298, 311, 220 N.W.2d 465 (1974). The gist of a criminal conspiracy is the specific, mutual agreement to perform the crime in question; the conspiracy statute provides punishment for the actual advance planning and agreement to perform the substantive criminal acts. *Id.*

*People v. Gilbert*, 183 Mich. App. 741, 749; 455 N.W.2d 731, 735 (1990). "Solicitation to commit murder occurs when (1) the solicitor purposely seeks to have someone killed and (2) tries to engage someone to do the killing. Solicitation is complete when the solicitation is made."

*People v. Sexton*, 250 Mich. App. 211, 227; 646 N.W.2d 875, 884 (2002) (quoting *Crawford*, 232 Mich. App. at 616; 591 N.W.2d at 674). "Circumstantial evidence alone may be sufficient to sustain a conviction and such evidence need not exclude every reasonable explanation except that of guilt." *United States v. Gonzalez*, 512 F.3d 285, 294 (6th Cir.), *cert. denied*, __ U.S. __, 129 S. Ct. 278 (2008).

### 2. Application

It was not disputed that Kenneth Flowers died as a result of a stranger shooting him in the back. Nor was it disputed that there was no justification for the murder. The intent element of murder was proved by McLister Trice's statement that Petitioner had arranged to kill Flowers. The causation element was proved by Petitioner's comment, "What you thought," which implied that he somehow participated in the crime, just as Ms. Trice suspected. In addition, Ms. Trice informed the police that, when Petitioner said he had already paid the person, she thought he meant that he had arranged to have Flower beat up, not shot. She later learned that he had been talking about a shooting. (Tr. June 17, 2003, at 90-91.)

The solicitation was proved by Petitioner's admission to Ms. Trice that he had already paid someone to do the job. Conspiracy was proved by Ms. Trice's comment to Mr. Flowers that Petitioner was arranging to have someone shoot Flowers. Although there was no showing that Petitioner knew the shooter, it was obvious that the shooter had been set up to accomplish a

murder. He was not known in the neighborhood where the shooting occurred, and he had no apparent motive, such as robbery. Before the shooting, he asked Kenneth Flowers' brother whether he was Ken. Shortly afterward, Kenneth Flowers arrived on the scene. The unidentified gunman then shot Mr. Flowers and fled.

Petitioner implies that Ms. Trice's testimony was not credible because she incriminated him only after being arrested for the crime herself and threatened by the police. "[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup*, 513 U.S. at 330. In other words, "[a]n assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). It is the province of the factfinder, and not a reviewing court, to weigh the probative value of the evidence and to assess the credibility of witnesses. *Id.*

A rational trier of fact could have concluded from the evidence adduced at trial that Petitioner aided and abetted the murder, conspired with the unidentified shooter, and paid the shooter to kill Kenneth Flowers. Therefore, the state court's decision – that the evidence was sufficient to support the convictions – was not contrary to, or an unreasonable application of, *Jackson*.

## IV. Conclusion

The state appellate court's adjudication of Petitioner's claims was not objectively unreasonable and did not result in an unreasonable determination of the facts. Accordingly, the petition for writ of habeas corpus (Doc. 1) is **DENIED**.

Reasonable jurists could disagree with the Court's resolution of claim II (ineffective assistance), claim VI (double jeopardy), and claim VII (insufficient evidence). Therefore, a certificate of appealability may issue on those claims. *Banks v. Dretke*, 540 U.S. 668, 674 (2004). The Court declines to issue a certificate of appealability on Petitioner's remaining claims (I, III, IV, and V) because no reasonable jurist would find the Court's assessment of those claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As for the Court's procedural-default analysis in connection with claim V, no reasonable jurist would find it debatable whether the Court was correct in its procedural ruling or whether the habeas petition states a valid claim of the denial of a constitutional right. *Id.* Petitioner nevertheless may proceed *in forma pauperis* on appeal without further authorization because he was granted *in forma pauperis* status in this Court and an appeal could be taken in good faith. Fed. R. App. P. 24(a)(3).

                                                         S/Bernard A. Friedman_____
                                                         BERNARD A. FRIEDMAN
Dated: February 5, 2009              UNITED STATES DISTRICT JUDGE